UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARLINSPIKE HALL LLC,

                                    Plaintiff,                              23-CV-2997 (JPO)

                    -v-                                                    OPINION AND ORDER

BAR LAB CONCEPTS LLC,

                                    Defendant.

J. PAUL OETKEN, District Judge:

    Before the Court is a motion for a preliminary injunction brought by Plaintiff Marlinspike

Hall LLC ("Marlinspike") against Defendant Bar Lab Concepts LLC ("Bar Lab Concepts").

(*See* ECF No. 15.)  Marlinspike operates a restaurant called "Jolene" in Manhattan.  Bar Lab

Concepts operates a bar and nightclub called "Jolene Sound Room" in Brooklyn.  Marlinspike

argues that an injunction is necessary to prevent Bar Lab Concepts from infringing on its

common law trademark rights in its trademark JOLENE in New York City.  The motion has

been fully briefed and the Court held a hearing on July 26, 2023.  For the reasons that follow,

Marlinspike's motion for a preliminary injunction is denied.

## I.      Background

### A.      Factual Background

    Marlinspike operates a restaurant and bar named JOLENE located at 54 Great Jones St., New

York, New York, in Manhattan's NoHo neighborhood.  (ECF. No. 15-1 ("Stulman Decl.") ¶ 2.)

Marlinspike opened its restaurant and bar on May 18, 2021, and it has since then continuously

used the mark JOLENE in connection with restaurant and bar services.  (Stulman Decl. ¶ 3.)

Marlinspike's menu includes food and an extensive drink and cocktail selection.  (*See* ECF No.

1

23-12.)  Marlinspike named its restaurant JOLENE as "a nod to Dolly Parton's iconic song and an homage to the laidback American bistro."  (ECF No. 1 ("Compl.") ¶ 24).  Marlinspike has made "substantial investment in advertising and promoting its services" under its JOLENE trademark since it opened, and it has been featured in several publications under its JOLENE trademark. (Stulman Decl. ¶¶ 4-5.)

Bar Lab Concepts is a Miami-based hospitality management company that operates venues across the country, including in New York City.  On or about March 18, 2023, Marlinspike learned that Bar Lab Concepts began operating a cocktail bar and sound room under the name JOLENE SOUND ROOM within the Moxy Hotel, owned by Marriott International, located at 353 Bedford Ave., Brooklyn, New York, in Brooklyn's Williamsburg neighborhood. (Stulman Decl. ¶ 10; ECF No. 23-8.)  Like Marlinspike, Bar Lab Concepts named its bar and sound room as a reference to Dolly Parton, writing on its website that: "Jolene is an intimate room with a 150 person capacity, inspired by the fierceness and femininity of Dolly Parton." (ECF No. 23-8.)

Bar Lab Concepts was aware of Marlinspike's pre-existing restaurant under the mark JOLENE.  "A couple of weeks" after Marlinspike opened its restaurant, a representative from Bar Lab Concepts, Elad Zvi, notified the founder and CEO of Marlinspike, Gabriel Stulman, that Bar Lab Concepts was interested in using the mark JOLENE for a concept.  (Stulman Decl. ¶ 7.)  Stulman responded in opposition, noting that Marlinspike was already using the mark.  (*Id.*)  Bar Lab Concepts subsequently filed a trademark application for the trademark JOLENE SOUND BAR in connection with International Trademark Class 43 (cocktail lounge services) on April 13, 2022. (Stulman Decl. ¶ 8.)  It was assigned Serial No. 97361667 and was published for opposition in the Official Gazette on March 14, 2023.  (*Id.*)  Marlinspike has opposed Bar Lab Concepts' trademark application before the USPTO based on Marlinspike's priority of use.  (Stulman Decl. ¶ 9.)

Marlinspike contends that as soon as Bar Lab Concepts opened its cocktail bar, Marlinspike's principals and employees began receiving "countless" calls from customers asking if there was any association between the establishments.  (Stulman Decl. ¶ 11.)  Marlinspike argues that Bar Lab Concepts' use of the mark JOLENE SOUND ROOM is likely to cause consumer confusion, leading them to believe that JOLENE and JOLENE SOUND ROOM are affiliated.

### B.      Procedural History

On April 11, 2023, Marlinspike initiated this action, asserting a federal claim for unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), as well as several claims under New York state law:  common law trademark infringement; common law unfair competition; deceptive practices under N.Y. Gen. Bus. Law § 349; and unjust enrichment.  Marlinspike seeks damages and injunctive relief.  (*See* Compl. ¶¶ 28-74.)

On April 20, 2023, Marlinspike filed the instant motion seeking a preliminary injunction barring Bar Lab Concepts from using the trademark JOLENE or JOLENE SOUND ROOM. (*See* ECF No. 15; ECF No. 16 ("Pl. Mem.").)  Bar Lab Concepts filed its opposition on May 11, 2023, arguing that Marlinspike failed to clearly show each factor required for a preliminary injunction.  (*See* ECF No. 22 ("Def. Opp'n").)  Marlinspike filed its reply on May 18, 2023.  (*See* ECF No. 25 ("Pl. Reply").)  This Court held a preliminary injunction hearing on July 26, 2023. At the hearing, the parties presented oral argument but did not offer live testimony or additional evidence, relying on the declarations and other documents attached to their written submissions.

## II.     Legal Standard

A party seeking a preliminary injunction must show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the

public interest." *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 119 (2d Cir. 2022) (quoting *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)).

"Under the Lanham Act, a plaintiff alleging trademark infringement must demonstrate that (1) 'it has a valid mark that is entitled to protection' and that (2) the defendant's 'actions are likely to cause confusion with [that] mark.'" *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 84 (2d Cir. 2020) (quoting *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)). Further, where a mark warrants protection under the Lanham Act, "both the likelihood of success on the merits and the potential for irreparable harm in the absence of preliminary relief may be demonstrated by a showing that a significant number of consumers are likely to be misled or confused as to the source of the products in question." *RiseandShine*, 41 F.4th at 119 (quoting *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1038 (2d Cir. 1992)).

## III.    Discussion

### A.    Protectability of the JOLENE Mark

Bar Lab Concepts' primary argument on the merits is that the JOLENE mark is not protectable as a matter of law because it is a first name. The Court disagrees.

To determine whether an unregistered mark is protectable, courts assess the distinctiveness of the mark. Trademark law uses four categories to describe different degrees of inherent distinctiveness. "In order of ascending strength, they are: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *RiseandShine*, 41 F.4th at 120; *see also Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976).

At one end, "[a] generic term is a common name, like automobile or aspirin, that describes a kind of product." *Gruner + Jahr USA Pub., a Div. of Gruner + Jahr Printing &*

*Publ'g Co. v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993) (citation omitted).  Generic

terms do not receive protection under trademark law.  *RiseandShine*, 41 F.4th at 120.  Next, a

descriptive term "is one that tells something about a product, its qualities, ingredients or

characteristics.  It may point to a product's intended purpose, its function or intended use, its

size, or its merit." *Gruner + Jahr*, 991 F.2d at 1076 (citation omitted).  Descriptive terms

receive protection under trademark law only if they have acquired secondary meaning.  *Id.*  A

suggestive mark "suggests the product, though it may take imagination to grasp the nature of the

product.  An example is ORANGE CRUSH, an orange-flavored beverage." *Id.* (citation

omitted).  An arbitrary mark is "one that has a dictionary meaning—though not describing the

product—like IVORY for soap." *Id.* at 1075–76.  Finally, a "fanciful mark is a name that is

made up to identify the trademark owner's product like EXXON for oil products and KODAK

for photography products." *Id.* at 1076.  Suggestive, arbitrary, and fanciful marks are inherently

distinctive and therefore protected under trademark law without the need to establish secondary

meaning.  *See RiseandShine*, 41 F.4th at 121.

  In the Second Circuit, "personal names—both surnames and first names—are *generally*

regarded as descriptive terms which require proof of secondary meaning" in order to receive

protection.  *815 Tonawanda St. Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648 (2d Cir. 1988)

(emphasis added) (citations omitted).  Bar Lab Concepts argues that since "Jolene" is a first

name, Marlinspike's JOLENE mark is, at most, descriptive.  (Def. Opp'n at 1.)  In response,

Marlinspike contends that JOLENE is not merely descriptive because it is not just a first name—

it is a cultural reference to Dolly Parton and her famous song.  As such, the use of the JOLENE

mark is evocative in the minds of consumers, not merely descriptive.

It is true that in *815 Tonawanda*, the Second Circuit established a rule that personal names are generally regarded as descriptive marks, but the Second Circuit left open the possibility that a personal name could be categorized as something other than a descriptive mark if a plaintiff makes the proper showing.  *Id.*  In *815 Tonawanda*, the district court had held that the mark at issue, FAY'S, was a suggestive or fanciful mark.  *Id.*  On appeal, the Second Circuit held that the district court had erred in that categorization because the plaintiff "[had] offered no reason for [the court] to consider 'Fay's' as signifying anything other than the possessive form of a woman's name."  *Id.*; *see also Hello I Am Elliot, Inc. v. Sine*, No. 19-CV-6905 (PAE), 2020 WL 3619505, at *6 (S.D.N.Y. July 2, 2020) (citing *815 Tonawanda*, 842 F.2d at 64748) ("[Defendant] does not allege—nor do plaintiffs argue—that the mark [at issue] refers to something other than the common first name.  As such, it is properly characterized as descriptive.").

When a mark that is a first name signifies something *other than* just a first name, the mark may be categorized as stronger than merely a descriptive mark.  In *Peaceable Planet, Inc. v. Ty, Inc.*, Judge Posner, writing for the Seventh Circuit, held that the name "Niles," when affixed to a toy camel as a reference to the Nile River, was suggestive, not descriptive.  *See Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 990 (7th Cir. 2004).  As Judge Posner explained in *Peaceable Planet*, "[t]he 'rule' that personal names are not protected as trademarks until they acquire secondary meaning is a generalization, and [the rule's] application is to be guided by the [rule's] purposes. . . . [T]he rule does not apply if the public is unlikely to understand the personal name as a personal name."  *Peaceable Planet*, 362 F.3d at 990.  The key to determining whether a personal name is a descriptive mark is whether the public will likely perceive the term

as a personal name or as something else.  *See* 2 McCarthy on Trademarks and Unfair

Competition § 13:2 (5th ed.).  This determination is a question of fact.  *Id.*

Marlinspike's JOLENE mark is the type of personal name mark that falls outside the rule

that first names are generally descriptive marks.  Unlike the plaintiffs in *815 Tonawanda* and

*Hello I'm Elliot*, Marlinspike has made a showing that JOLENE signifies something other than

just a first name.  Indeed, it is undisputed that both Marlinspike and Bar Lab Concepts chose the

mark JOLENE to evoke Dolly Parton and her famous song.  (See ECF No. 23-8 at 4.)  In their

advertising, both establishments explicitly refer to Dolly Parton in order to evoke something in

the minds of consumers about the nature of their establishments.  The intent of both Marlinspike

and Bar Lab Concepts was that the name "Jolene" would be *not* merely a first name (either a

generic first name or the name of someone associated with the establishment, such as its owner),

but rather a reference to the Dolly Parton song.  It is ironic for Bar Lab Concepts to now argue

that "Jolene" is nothing more than a first name when Bar Lab Concepts seems to have chosen

that name precisely because it is evocative of so much more.

To be sure, some members of the public might assume, at least initially, that the name

"Jolene," in reference to either establishment, is merely being used as a first name.  But both

parties have taken at least some steps to lead the public to associate the name "Jolene" with the

Dolly Parton song:  JOLENE SOUND ROOM notes on the "About" page of its website that "the

space [is] inspired by the fierceness and femininity of Dolly Parton"; JOLENE has noted in its

marketing that the name is "a nod to Dolly Parton's iconic song," and the restaurant has a

photograph of Dolly Parton on the wall at the restaurant (as shown on the "Gallery" page of its

website).  The strength of the association is buttressed by the fame of the Dolly Parton song and

the relative uncommonness of the name "Jolene" in the United States.[1]  Similarly, consider a restaurant named "Roxanne."  Without more, the name would presumptively be merely a first name—and merely descriptive for trademark purposes.  But if intentionally and effectively marketed or branded as being associated with the classic song by the Police, it could be more—it could be suggestive.  The same would apply to a venue called "Billie Jean"—if specifically used to evoke the Michael Jackson song.

The Court finds Marlinspike likely to succeed on its argument that the JOLENE mark, as used here, is suggestive for trademark purposes.  As such, Marlinspike's JOLENE mark is entitled to protection under trademark law without proof of secondary meaning.

### B.  Likelihood of Reverse Confusion

Having established as a threshold matter that Marlinspike is likely to succeed on the merits of the protectability of its JOLENE trademark, the Court turns next to the likelihood of confusion.  Trademark infringement cases most commonly involve "forward confusion"—that is, where a junior user uses the mark of a senior user (*i.e.*, the party that first used the mark) to sell goods or services based on the misperception that they originate with the senior user.  Here, however, Marlinspike presents a theory of "reverse confusion."  Reverse confusion can occur when the junior user has superior resources and leverages those resources to saturate the market, leading consumers to believe that the subsequent user is responsible for the products or services of the senior user.  Reverse confusion "recognizes the danger that a junior user's products may tarnish the image of the senior user's products, or that consumers may view the senior user as an unauthorized infringer of the junior user's products, thus injuring the senior user's reputation and

---

[1] *See* ECF No. 23 ¶ 8 (citing evidence that "Jolene" was ranked 624th in popularity of female first names in the 1990 U.S. Census, with a frequency of .02%); *id.* ¶ 9 (citing evidence that as of 2021 "Jolene" was ranked 456th in popularity of female first names).

impairing its good will." *Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 299 (S.D.N.Y. 2021) (internal citations omitted).  Marlinspike argues that Bar Lab Concepts is using its superior resources to saturate the market, causing consumers to believe that Marlinspike's services are those of Bar Lab Concepts, or that the two are affiliated.  (Pl. Mem. 15.)

In order to prevail, Marlinspike must show that Bar Lab Concepts' use of the mark JOLENE SOUND ROOM is likely to cause confusion.  Courts in this Circuit assess the likelihood of confusion under the eight-factor test from *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  These eight factors are: (1) the strength of the mark, (2) the degree of similarity between the two marks, (3) the proximity of the products, (4) the likelihood that the prior owner will bridge the gap, (5) actual confusion, (6) the defendant's good faith in adopting its own mark, (7) the quality of defendant's product, and (8) the sophistication of the buyers.  *See id.*  Although courts "generally do not treat any one *Polaroid* factor as dispositive in the likelihood of confusion inquiry," *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000) (citation omitted), "the evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins." *RiseandShine*, 41 F.4th at 124 (quoting *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 584 (2d Cir. 1993).  The Court assesses each factor in turn.

### 1.    The Strength of the Mark

The strength of a mark is a measure of "its tendency to identify the goods [or services] sold under the mark as emanating from a particular, although possibly anonymous, source." *Two Hands IP LLC*, 563 F. Supp. 3d at 303 (quoting *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960–61 (2d Cir. 1996)).  Courts apply the principle that "[t]he more unusual and distinctive a particular mark, the more likely the consumer will assume, upon seeing it essentially replicated, that the newly observed user is the same as, or affiliated with, the originally observed

user." *Guthrie Healthcare Sys. v. ContextMedia, Inc*., 826 F.3d 27, 41 (2d Cir. 2016).  As a threshold matter, the relevant mark for the Court's analysis is Marlinspike's.  In a likelihood of reverse confusion case, as in a likelihood of forward confusion case, the Second Circuit considers the strength of the senior user's mark.  *See RiseandShine*, 41 F.4th at 121-24 (2d Cir. 2022); *see also* 4 McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed.) ("[T]he Second Circuit . . . takes the position that in reverse confusion cases, the question of strength is the same as in forward confusion: the senior user must prove that its mark is strong.").

In this Circuit, to gauge "a mark's strength, a court must consider both the inherent distinctiveness of the mark and the mark's distinctiveness in the marketplace." *Two Hands*, 563 F. Supp. 3d at 303 (citing *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 118 (2d Cir. 1999).

*Inherent Distinctiveness.*  Generally speaking, suggestive marks, such as JOLENE, are "inherently distinctive" under the first prong.  *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 385 (2d Cir. 2005).  As the Second Circuit recently clarified, however, "[a] finding of suggestiveness does not guarantee a determination that the mark is a strong one."  *RiseandShine*, 41 F.4d at 121 (citation omitted).  In *RiseandShine*, the court held that the word "Rise" in reference to coffee, albeit suggestive, was nevertheless "inherently weak" because the word is "so tightly linked with the perceived virtues of coffee."  *Id.* at 122.  Here, as explained above, the use of JOLENE is more than merely a name—and not merely descriptive—because it is intended to suggest the Dolly Parton song.  But that does not end the inquiry, because inherent distinctiveness is a relative determination, not a binary one.  *See id*. at 121-22.  The Court finds the JOLENE mark to be more inherently distinctive than the "Rise" mark at issue in *RiseandShine*: JOLENE is intended and advertised as a specific and unique reference to the Dolly Parton song; it does not reference a specific person, nor is it used as a generic first name.

However, the Court finds the inherent distinctiveness of the JOLENE mark to be relatively moderate on the record before the Court.  First, JOLENE is, after all, still a woman's first name.  And while it is undisputed that Marlinspike *intended* the name to be a reference to the Dolly Parton song, it is not entirely clear that customers are overwhelmingly likely to view it as such.  It is possible that some number of customers assume it is a reference to the name of a person associated with the restaurant or simply a generic first name.  (This, of course, is less likely for customers who notice the photograph of Dolly Parton on the wall of the restaurant and are familiar with the song.)  Moreover, based on the limited evidence before the Court, the restaurant's association with the Dolly Parton song appears to be relatively loose and attenuated—an inspiration and a vibe more than an dominant identity or a theme.  Indeed, it is perhaps noteworthy that the two establishments draw on very different aspects of Dolly Parton and her song: while the restaurant uses JOLENE as "a nod to Dolly Parton's iconic song and an homage to the laidback American bistro," JOLENE SOUND ROOM is "inspired by the fierceness and femininity of Dolly Parton."

In short, while its mark is not inherently weak, Marlinspike has not shown that JOLENE's inherent distinctiveness is particularly strong.

*Distinctiveness in the Marketplace*.  The Court turns to the second prong: distinctiveness in the marketplace.  Even when suggestive marks are inherently distinctive, they are "not necessarily" distinctive in the marketplace.  *Gameologist Grp., LLC v. Sci. Games Int'l, Inc*., 838 F. Supp. 2d 141, 158 (S.D.N.Y. 2011).  A plaintiff bears the burden of proving market distinctiveness "with reference to this circuit's well established secondary meaning factors: (1) advertising and promotional expenses; (2) consumer studies linking the mark to the source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark;

and (6) length and exclusivity of the mark's use." *Two Hands*, 563 F. Supp. 3d at 303 (citing *Centaur Commc'ns, Ltd. v. A/S/M Commc'ns, Inc*., 830 F.2d 1217, 1222 (2d Cir. 1987)).

As to advertising expenses, Marlinspike avers that it has "made substantial investment in advertising and promoting its services under its JOLENE trademark since it opened" on May 18, 2021.  (Stulman Decl. ¶ 4.)  It does not, however, quantify or further describe its "substantial" investment in advertising.

As to media coverage, Marlinspike has shown that its restaurant under the JOLENE mark has been featured in several publications advertising and promoting its services including but not limited to *The New York Times*, *Time Out New York*, *Resy Blog*, *Thrillist*, *Michelin Guide*, *Galavante*, *Eater*, and *CityTourNY.*  (Stulman Decl. ¶ 5.)  However, Marlinspike has not established that this media coverage has been unsolicited.  *See Hello I Am Elliot*, 2020 WL 3619505, at *9 ("Although the [plaintiff] does allege that 'the press has reported on ELLIOT,' there is no indication that this publicity was unsolicited.").

As to the length and exclusivity of the mark's use, Marlinspike has used the JOLENE trademark since May 18, 2021—approximately two years.  Although "there is no magical time period which renders a mark sufficiently exclusive[,] the longer and more exclusive the trade use, the more likely it is that a mark has acquired secondary meaning."  *Hello I Am Elliot*, 2020 WL 3619505, at *10.  Marlinspike has not offered evidence that its use of the JOLENE mark has been "exclusive" in the relevant market, although the record does not reveal any other use during this relatively short period (aside from that of Defendant).

Marlinspike has not presented evidence establishing the remaining factors relevant to distinctiveness in the marketplace, such as consumer studies or sales success.

Thus, Marlinspike has made a moderate showing of *inherent distinctiveness* with respect to the JOLENE mark, and its showing of *marketplace distinctiveness* is relatively weak. This factor is therefore marginal.

### 2. The Similarity of the Two Marks

Second, the Court must assess the similarity of the two marks. Here, Marlinspike's mark is JOLENE and Bar Lab Concepts' mark is JOLENE SOUND ROOM. The dominant component of both marks—"Jolene"—is identical. The additional words that Bar Lab Concepts attaches to the name "Jolene" are merely descriptive of the services that Bar Lab Concepts seeks to provide—a cocktail bar with music. Thus, the term "Jolene" is the "dominant" portion of the mark and therefore should be given "greater weight." *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 333 (S.D.N.Y. 2010) (citing *Kangol Ltd. v. Kangaroos U.S.A., Inc.*, 974 F.2d 161, 163 (Fed. Cir 1992); *Herbko Int'l Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165 (Fed. Cir. 2002)).

Moreover, Bar Lab Concepts omits the words "Sound Room" from much of its advertising and promotional materials, referring instead to its establishment simply as "Jolene." For example, Bar Lab Concepts refers to its establishment as "Jolene" on its website and Instagram account. (Pl. Mem. at 5-8.) Media publications have also referred to Bar Lab Concepts' establishment as "Jolene," and Bar Lab Concepts' representatives have been quoted as referring to Bar Lab Concepts' services as "Jolene" in the press and to media outlets while promoting their services. (Pl. Mem. at 7-8.)

Because the dominant portions of the marks are identical, and because Bar Lab Concepts often uses the very same mark as Marlinspike, the Court concludes that this factor weighs in favor of Marlinspike.

### 3.    The Proximity of the Products

Third, the Court considers the competitive proximity of the products, that is, whether and to what extent the two products compete.  *See Cadbury Beverages, Inc. v. Cott Corp*., 73 F.3d 474, 480 (2d Cir. 1996) (citing *Lang v. Ret. Living Publ'g Co*., 949 F.2d 576, 582 (2d Cir. 1991)).  The Second Circuit has explained:

> The proximity factor can apply to both the subject matter of the commerce in which the two parties engage and the geographic areas in which they operate. . . . [T]he public is less likely to draw an inference of relatedness from similar marks when the marks' users are in dissimilar areas of commerce, or . . . [are] in geographic areas widely distant from one another.

*Guthrie*, 826 F.3d at 39.  Additional relevant factors include "the extent to which the goods or services fall within the same class or are used together, as well as any difference in content, purpose, geographic distribution, market position and audience appeal."  *O'Keefe v. Ogilvy & Mather Worldwide, Inc*., 590 F. Supp. 2d 500, 522 (S.D.N.Y. 2008).  "The question is whether the parties offer their products to the same market audience."  *Id.*

The two establishments both provide cocktail lounge services and fall under International Trademark Class 43 (Food Services).  Both establishments are located within New York City only 2.7 miles apart.  (Pl. Mem. at 2.)  Both the subject matter of the commerce and the geographical proximity of the two establishments tend to support Marlinspike.

That Marlinspike's restaurant is located in Manhattan's NoHo neighborhood and Bar Lab Concepts' Sound Room is located in Williamsburg, Brooklyn arguably adds to—rather than detracts from—the likelihood that the public would draw an inference of relatedness.  (Def. Opp'n at 20.)  Both establishments target similar audiences as they are both nightlife venues operating at similar price points.

Bar Lab Concepts emphasizes that Marlinspike's establishment is fundamentally a high-end restaurant that also serves cocktails, while its establishment is a late-night dance club. Indeed, as Bar Lab Concepts points out, the establishments are rarely open at the same times— only from 10:00 p.m. to 11:30 p.m. on Thursdays through Saturdays, for a total of 4.5 hours per week. (Def. Opp. at 26.) These facts do tend to show that the establishments are not directly competing in the sense that a confused consumer might choose one over the other on a given evening. But Marlinspike is proceeding on a reverse confusion theory, and these differences do not detract from the likelihood that the public would draw an inference of *relatedness*. New York City is home to many entertainment "concepts" of associated establishments that offer different services. To name a few examples: il Buco's restaurants and housewares store; Maison Kitsune's clothing store and café; Winner's various cafés, bakery, and butcher shop. And of course, both establishments are attempting to evoke an atmosphere or vibe associated with Dolly Parton and her famous song.

### 4. Actual Confusion

The Lanham Act seeks to prevent consumer confusion that enables a seller to pass "off his goods as the goods of another." *Lang*, 949 F.2d at 582. Marlinspike must show that Bar Lab Concepts' use of the mark "could inflict commercial injury in the form of either a diversion of sales, damage to goodwill, or loss of control over reputation." *Sports Auth*., 89 F.3d at 963 (citing *Lang,* 949 F.2d at 5830).

Marlinspike offers testimony that its principals and employees have already received "countless" calls from customers asking if there is any association between the two entities. (Stulman Dec. ¶ 11.) While this does constitute some evidence of associational confusion that would lead Marlinspike to lose control over its reputation, the evidence is not quantified or corroborated, and Marlinspike does not offer any additional evidence. The word "countless" on

its own is particularly unhelpful in conveying evidentiary meaning.  For that reason, the Court concludes that this factor is marginal.

### 5.      The Likelihood of Plaintiff Bridging the Gap

"Bridging the gap refers to the senior user's interest in preserving avenues of expansion and entering into related fields."  *Hormel Foods Corp. v. Jim Henson Prods., Inc*., 73 F.3d 497, 504 (2d Cir. 1996) (citation and internal quotation marks omitted).  This factor involves a determination of the likelihood that Marlinspike will enter Bar Labs Concepts' business or the likelihood of the average customer perceiving that to be the case.  *Two Hands*, 563 F. Supp. 3d at 306 (citing *Sports Auth*., 89 F.3d at 963).

Marlinspike argues that, here, there is "no gap to be bridged," given that both entities offer bar and cocktail lounge services.  *See e.g.*, *Banff, Ltd. v. Federated Dep't Stores, Inc*., 841 F.2d 486, 492 (2d Cir. 1988).  However, while Marlinspike's restaurant has a focus on dining, Bar Lab Concepts' Sound Room is focused on music.  These different focuses are also reflected in their hours of operation, which have minimal overlap.  (*Compare* ECF No. 23-9 at 2, *with* ECF No. 23-11 at 2.)  In any event, even where both parties are in the same general industry, this factor does not necessarily weigh in the plaintiff's favor.  *See e.g.*, *Two Hands*, 563 F. Supp. 3d at 306; *Brockmeyer v. Hearst Corp*., 248 F. Supp. 2d 281, 297 (S.D.N.Y. 2003); *SLY Mag., LLC v. Weider Publ'ns LLC*, 529 F. Supp. 2d 425, 439 – 40 (S.D.N.Y. 2007).

Marlinspike has not made any showing that it is likely to enter the "sound room" or dance club market, nor has Marlinspike presented any evidence regarding average customer perception on the matter.  The Court concludes that because the two entities are sufficiently different for purposes of bridging the gap, and because Marlinspike has not expressed any desire to enter the dance club or sound room market, nor presented consumer evidence, this factor weighs in favor of Bar Lab Concepts.

16

### 6.     Defendant's Good Faith in Adopting Its Mark

The good faith factor "looks to whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between [its] and the senior user's product." *Lang*, 949 F.2d at 583 (citation omitted).  Marlinspike claims that Bar Lab Concepts exhibited bad faith because Bar Lab Concepts was aware of Marlinspike's pre-existing use of the JOLENE mark.  Prior knowledge of Marlinspike's trademark "does not give rise to a necessary inference of bad faith, because adoption of a trademark with actual knowledge of another's prior registration of a very similar mark may be consistent with good faith." *Id.* at 583 – 84.

Bar Lab Concepts responds that it acted in good faith.  It offers evidence that it had already begun plans to develop a concept named "Jolene" as early as January 2019, which was years before the conversation between representatives from Bar Lab Concepts and Marlinspike took place.  (*See* ECF No. 24-1) (registration of domain names "joleneshifi.com" and "joleneshifiroom.com").  This evidence that Bar Lab Concepts had considered naming its concept "Jolene" before Marlinspike even began using the mark cuts against the notion that Bar Lab Concepts had the intention of capitalizing on Marlinspike's reputation and goodwill.  The Court concludes that this factor weighs modestly in favor of Bar Lab Concepts.

### 7.     The Quality of Defendant's Products

Under the seventh factor, the Court "generally considers whether the senior user's reputation could be 'tarnished by [the] inferior [services] of the junior user.'" *Cadbury v. Cott Corp.*, 73 F.3d 474, 483 (2d Cir. 1996) (citation omitted).  However, where the junior user's products are of approximately the same quality as the senior user's, there is a greater likelihood of confusion.  The Second Circuit has explained:

> A marked difference in quality . . . actually tends to reduce the likelihood of confusion in the first instance, because buyers will be less likely to assume that the senior user whose product is high-quality will have produced the lesser-quality products of the junior user. Conversely, where the junior user's products are of approximately the same quality as the senior user's, there is a greater likelihood of confusion, but less possibility of dilution.

*Savin Corp. v. Savin Grp.*, 391 F.3d 439, 461 (2d Cir. 2004) (citing *Hasbro*, 858 F.2d at 78; *see, e.g.*, *Lois Sportswear*, 799 F.2d at 875).  Bar Lab Concepts does not dispute that the quality of its services is equal or comparable to that of Marlinspike.  (Def. Opp'n at 22.)  This factor therefore weighs in favor of Marlinspike.

### 8. Sophistication of the Consumers

The Court's analysis of the consumer sophistication factor "considers the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Star Indus.*, 412 F.3d at 390 (citing *Sports Auth.*, 89 F.3d at 965 (cleaned up)).  "Consumer sophistication may be proved by direct evidence such as expert opinions or surveys.  In addition, in some cases a court is entitled to reach a conclusion about consumer sophistication based solely on the nature of the product or its price." *Star*, 412 F.3d at 390.  "In general, consumers exercise less sophistication with respect to lower priced products." *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 273 (S.D.N.Y. 2022) (internal citations omitted).  "But 'price alone is not determinative of the care a consumer will take in making purchases, and our touchstone remains the general impression that is left with the ordinary consumer.'" *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 119 (2d Cir. 2009) (citing *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 965 (2d Cir.1996)).  Here, the parties have not submitted any relevant expert opinions or surveys.  The Court must determine consumer sophistication based on the nature of the products and services.  Marlinspike's restaurant appears to be high-end

based on the menu offerings and pricing, as well as its Michelin review and the awards for which it was a contender.  (Pl. Reply at 8; ECF No. 23-12.)  On the limited facts before it, the Court concludes that consumers would exercise a level of care in choosing to dine at Marlinspike's restaurant.  Therefore, this factor weighs in favor of Bar Lab Concepts.

Taking the eight *Polaroid* factors together, the Court ultimately finds that Marlinspike has failed to demonstrate a likelihood of success on the merits of establishing a likelihood of confusion.  On the first factor, Marlinspike has made only a marginal showing on the strength of the mark.  Although Marlinspike has overcome its primary legal hurdle in establishing that its use of JOLENE is suggestive and therefore protectable, it has made a relatively weak showing on the inherent distinctiveness of the mark and its distinctiveness in the marketplace.  While the second and third *Polaroid* factors—similarity and proximity—weigh in favor of Marlinspike, the fourth factor, actual confusion, is marginal, and the remaining four factors weigh in favor of Bar Lab Concepts.  While no single factor is dispositive, it is important to note that Marlinspike has offered very limited or no evidence on most of these factors.  Its evidence is limited to a three-page declaration consisting largely of generalized and unquantified statements regarding the eight factors.  Overall, the Court concludes that Marlinspike has failed to establish a likelihood of confusion.

### C.    Irreparable Harm

Where a mark warrants protection under the Lanham Act, "both the likelihood of success on the merits and the potential for irreparable harm in the absence of preliminary relief may be demonstrated by a showing that a significant number of consumers are likely to be misled or confused as to the source of the products in question."  *RiseandShine*, 41 F.4th at 119 (quoting *Bristol-Myers Squibb*, 973 F.2d at 1038).

Under the Trademark Modernization Act of 2020, a plaintiff seeking a preliminary injunction is entitled to a rebuttable presumption of irreparable harm upon a court's finding a likelihood of success on the merits.  *See* 15 U.S.C. § 1116(a).  Thus, if (1) the plaintiff establishes that it has a likelihood of success on the merits (that is, it establishes both the validity of its mark and a likelihood of confusion), and (2) the defendant fails to rebut the presumption, the plaintiff satisfies its burden of showing irreparable harm.  *See Two Hands*, 563 F. Supp. 3d at 300 (finding that the presumption did not apply in that case because the plaintiff failed to demonstrate a likelihood of confusion).

Because Marlinspike has failed to show a likelihood of success on the merits, it is not entitled to a presumption of irreparable harm.  And because the Court has already concluded that Marlinspike has not made a strong showing of a likelihood of confusion, the Court also concludes that Marlinspike has not made a sufficient showing that it will suffer irreparable harm in the absence of preliminary relief.

Furthermore, as Judge Koeltl found in *Two Hands*, here too the plaintiff has not shown that it is likely to "lose control over its reputation," nor has it "provided sufficient evidence showing a possible loss of goodwill in the industry."  *Id*. at 301.  Marlinspike's unquantified assertion of consumer confusion does not constitute proof of irreparable harm, "particularly . . . where there is no evidence of detrimental effects from the purported confusion."  *Id*. (citation omitted).  Marlinspike's argument that it will lose control of its goodwill and reputation is not sufficiently substantiated to support a finding of irreparable harm.

### D.   Balance of the Equities

In determining whether the balance of the equities tips in the Plaintiff's favor and whether granting the preliminary injunction would be in the public interest, the Court "must

balance the competing claims of injury and must consider the effect on each party of the granting

or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24

(2008) (citation omitted).

The balance of the equities and the public interest ultimately weigh against a preliminary

injunction. Although "there is generally a strong interest in preventing public confusion,"

Marlinspike has failed to make a sufficient showing of likelihood of confusion. *Cf. Two Hands*,

563 F. Supp. 3d at 309. In light of the Court's findings on likelihood of success and irreparable

harm, the Court finds that the equities and the public interest do not warrant granting preliminary

injunctive relief.

## IV.    Conclusion

For the foregoing reasons, Marlinspike's motion for a preliminary injunction is DENIED.

The Clerk of Court is directed to close the motion at ECF Number 15.

SO ORDERED.

Dated: October 17, 2023
       New York, New York

_____
           J. PAUL OETKEN
      United States District Judge